

# COURT OF APPEALS
## SECOND DISTRICT OF TEXAS
## FORT WORTH


### NO. 2-08-061-CR


KERRY BOLLMAN                                                                    APPELLANT

V.

THE STATE OF TEXAS                                                                   STATE

------------

FROM THE 16TH DISTRICT COURT OF DENTON COUNTY

------------

## MEMORANDUM OPINION[1]

------------

### Introduction

Appellant Kerry Bollman appeals his conviction for arson of a habitation.[2]

In two points, he contends that the trial court erred by overruling his objection

------------

[1] *See* Tex. R. App. P. 47.4.

[2] Arson of a habitation is a first degree felony offense that carries a punishment range of five to ninety-nine years' confinement. *See* Tex. Penal Code Ann. §§ 12.32(a), 28.02(d)(2) (Vernon 2003 and Supp. 2008).

to extraneous offense testimony and by granting the State's motion to cumulate his sentences.[3] We reform, and as reformed, affirm the trial court's judgment.

## Background Facts

In January 2006, a Denton County grand jury indicted appellant for committing arson of his ex-wife's house. Five months later, appellant entered into a plea bargain with the State in which he agreed to be placed on deferred adjudication community supervision for eight years and abide by certain conditions.

In April 2007, the State filed a motion to proceed with the adjudication of appellant's guilt. In September 2007, the State filed a "Motion for Cumulative Sentences."[4] In December 2007, the State filed its second amended motion to proceed with the adjudication of appellant's guilt, asserting

---

[3] In the table of contents portion of appellant's brief, he states that his second point of error concerns an alleged failure of the trial court to "instruct the jury . . . that it could not consider unadjudicated extraneous offenses." However, in the argument portion of appellant's brief, his second point of error regards cumulation; also, no jury was impaneled in appellant's case. For these reasons, we will address sentence cumulation as appellant's second point.

[4] The State's motion, filed pursuant to article 42.08 of the code of criminal procedure, gave appellant notice "of the State's intent for a sentence on the aforementioned case and cause numbers," but it did not refer to any such cases or cause numbers specifically. *See* Tex. Code Crim. Proc. Ann. art. 42.08 (Vernon 2006).

that appellant violated the conditions of his deferred adjudication order by (among other acts) committing several new offenses, failing to pay child support, and failing to complete his community service obligations.[5]

On January 17, 2008, the trial court commenced its hearing on the State's motion to adjudicate.[6] The evidence presented at the hearing indicated that appellant understood the terms of his community supervision and that he regularly met with his probation officer but that he had not completed any of his community service obligations, that he had not paid child support as required, and that he had committed several further offenses.[7] Specifically, appellant's ex-wife testified that in April 2007, appellant violated the terms of a protective order that had been issued during their divorce proceedings.[8]

---

[5] The State proceeded with the second amended motion to adjudicate appellant's guilt.

[6] Appellant has not challenged the sufficiency of the evidence supporting the findings that the trial court used to grant the State's motion and adjudicate him guilty. For this reason, we will not detail all of the evidence submitted at the hearing on the State's motion. Instead, we will only include a brief summary of the evidence presented that is relevant to the points raised in this appeal.

[7] Testimony also indicated that appellant failed to make payments on fines and court costs as his deferred adjudication order required. However, the trial court did not revoke appellant's deferred adjudication on these grounds because it found that appellant had no ability to make the payments.

[8] Violation of a protective order is typically a Class A misdemeanor. *See* Tex. Penal Code Ann. § 25.07(g) (Vernon Supp. 2008). Appellant's protective

3

Also, evidence indicated that in May 2007, appellant, who had been drinking, went to his father's house. When his father arrived at the house, appellant pointed a knife at his own chest as if he were going to stab himself. He then waved the knife toward his father, and his father called the police. Officers entered the house with their weapons drawn, and appellant told them to "leave him alone." The officers told appellant to put the knife down, but he refused to do so and he told the officers to "shoot him and that someone was going to die." Appellant pointed the knife at himself and at the officers, and the officers sprayed him with pepper spray.[9] After appellant still refused to drop the knife, an officer fired a bean bag shotgun three times at appellant. After the officers told appellant they would "taze" him, appellant eventually dropped the knife.[10]

Finally, the evidence established that in August 2007, while being released from a hospital after falling in his jail cell and injuring his wrist and his ribs, appellant choked a uniformed Denton County detention officer as the

order prohibited him from communicating with his ex-wife in a threatening or harassing manner. Appellant's ex-wife testified that he made harassing phone calls to her and that during one of those calls, he threatened to kill her.

[9] Appellant denied pointing the knife at his father or the officers.

[10] In the State's motion to adjudicate, these events were described as deadly conduct and assault of a public servant.

officer placed him in a van.[11]  Appellant attempted to explain this event by testifying that he had an adverse reaction to pain pills given to him in the hospital and by calling several witnesses who testified that he previously had such reactions to pain medicine.  The detention officer testified that he had to go to therapy for pain in his arm caused by his fall to the ground after appellant choked him.

On February 5, 2008, after the parties rested and counsel for both sides presented closing arguments, the trial court adjudicated appellant guilty of the arson charge and assessed punishment at forty years' confinement.  A week later, the court held a brief hearing related to appellant's sentencing.  At the hearing, the State noted that it had filed a motion to cumulate appellant's sentences and asked the trial court to order that appellant's arson sentence run "consecutive to any other sentence [appellant] may receive" in cases he had pending in three counties "in the event that he receive[d] a sentence" in those cases.  The court granted the State's motion and formally sentenced appellant. That same day, the court entered a judgment reflecting the decisions it had made.  Appellant filed his notice of this appeal.

---

[11] These acts were described in the State's motion as assault on a public servant and attempted escape.

## Admission of Extraneous Offense Testimony

In his first point, appellant contends that the trial court erroneously admitted testimony concerning an extraneous offense. Specifically, appellant complains about a portion of his former father-in-law's testimony about him, in which the following colloquy occurred:

[STATE]: You guys have had some ordeals over the years; is that fair to say?

[WITNESS]: Yes, that's fair.

[STATE]: Did you guys ever get into it physically?

[DEFENSE COUNSEL]: Objection, relevance, Your Honor.

[STATE]: I'll be brief and then there is a point.

THE COURT: Overruled.

[STATE]: Did y'all get into it a couple of times physically?

[WITNESS]: Just once, really.

. . . .

[STATE]: And did this man, [appellant], choke you or attempt to choke you?

[WITNESS]: Yes, he did.

[DEFENSE COUNSEL]: I object to relevance, Your Honor.

[STATE]: It goes to show motive, opportunity, absence of mistake. They've opened the

6

> door because this assault on a public servant in August of 2007 with the jailer, they're trying to say he had this magic pill that made him act all goofy and he was temporarily insane for a few seconds, but he was fine before and he was fine after. This goes to show that [appellant] has not only a history of displaying knives, but a history of choking people, just to prove motive, opportunity, intent, absence of mistake, planning.
>
> . . . .

THE COURT:           Your objection is overruled.

[STATE]:              You can answer the question. Did this man ever choke you?

[WITNESS]:          On one occasion, yes.

Appellant asserts that the trial court abused its discretion by admitting this evidence.

Our review of an order revoking community supervision is limited to determining whether the trial court abused its discretion. *Cardona v. State*, 665 S.W.2d 492, 493 (Tex. Crim. App. 1984); *Allbright v. State*, 13 S.W.3d 817, 818 (Tex. App.—Fort Worth 2000, pet. ref'd); *see Oveal v. State*, No. 14-07-00755-CR, 2008 WL 5085405, at *2 (Tex. App.—Houston [14th Dist.] Nov. 25, 2008, no pet.) (mem. op., not designated for publication) (applying the abuse of discretion standard to the granting of a motion to adjudicate). An

7

abuse of discretion occurs when the trial judge's decision is so wrong that it falls outside the zone within which reasonable persons might disagree. *Allbright*, 13 S.W.3d at 818. A trial court's decision to admit evidence is subject to review from these same standards. *See Moses v. State*, 105 S.W.3d 622, 627 (Tex. Crim. App. 2003); *Chaddock v. State*, 203 S.W.3d 916, 923 (Tex. App.—Dallas 2006, no pet.).

"Evidence of other crimes, wrongs or acts is not admissible to prove the character of a person in order to show action in conformity therewith," but such evidence may be admissible to show "motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident." Tex. R. Evid. 404(b); *see Moses*, 105 S.W.3d at 626. The trial court is "entitled to deference" on its decision regarding whether evidence is relevant to a "non-propensity purpose" under rule 404(b); such a decision is only reviewable for an abuse of discretion. *Ransom v. State*, 920 S.W.2d 288, 300 (Tex. Crim. App.) (op. on reh'g), *cert. denied*, 519 U.S. 1030 (1996); *see also Sanders v. State*, 255 S.W.3d 754, 760 (Tex. App.—Fort Worth 2008, pet. ref'd) (explaining that the "trial court is given wide latitude to admit or exclude evidence of extraneous offenses").

Rebuttal of a defensive theory is "one of the permissible purposes for which relevant evidence may be admitted under Rule 404(b)." *Moses*, 105

S.W.3d at 626; *see Casey v. State*, 215 S.W.3d 870, 879 (Tex. Crim. App. 2007). Specifically, evidence of previous violent acts is admissible under rule 404(b) to rebut such a theory and prove the intent of the defendant. *See Jones v. State*, 241 S.W.3d 666, 669 (Tex. App.—Texarkana 2007, no pet.); *Robinson v. State*, 844 S.W.2d 925, 929 (Tex. App.—Houston [1st Dist.] 1992, no pet.) (noting that when "the accused claims self-defense or accident, the State, in order to show the accused's intent, may show other violent acts where the defendant was an aggressor").

In *Martin v. State*, the defendant, who was charged with aggravated sexual assault of his daughter, submitted a defensive theory that, on the occasion in question, taking Lithium caused him to have a delusion that he was in bed with his wife. No. 05-03-01286-CR, 2004 WL 1277948, at *1 (Tex. App.—Dallas 2004, no pet.) (not designated for publication). The State countered this theory by presenting evidence that on a previous occasion while the defendant was not taking Lithium, he sexually assaulted one of his daughter's friends. *Id.* at *2. On appeal, the defendant argued that such evidence was inadmissible. *Id.* The Dallas court held that the trial court properly admitted the evidence of the extraneous sexual assault, noting that it was relevant to show that the defendant acted intentionally and knowingly with

respect to his daughter and to rebut the defensive theory that the sexual assault was an accident. *Id.* at *3.

Like *Martin*, in this case appellant attempted to explain his engaging in criminal activity (specifically, choking a detention officer) by claiming that he had an adverse reaction to medication. We agree with the reasoning expressed in *Martin* that evidence of an occasion where appellant acted similarly while not taking medication is relevant to rebut his defensive theory that he acted inadvertently because of an adverse reaction to medication. *Id.*; *see Moses*, 105 S.W.3d at 626. We therefore hold that the trial court did not abuse its discretion in admitting evidence that appellant had choked his father-in-law.

Further, even if the trial court had erred by admitting this evidence, such an error could not be reversible for two reasons. First, at a later point in the hearing on the State's motion to adjudicate, appellant's ex-wife testified without objection that appellant choked her father. To preserve error, a party must continue to object each time objectionable evidence is offered. *Fuentes v. State*, 991 S.W.2d 267, 273 (Tex. Crim. App.), *cert. denied*, 528 U.S. 1026 (1999); *Ethington v. State*, 819 S.W.2d 854, 858–59 (Tex. Crim. App. 1991). A trial court's erroneous admission of evidence will not require reversal when other such evidence is received without objection, either before or after the complained-of ruling. *Leday v. State*, 983 S.W.2d 713, 717–18 (Tex. Crim.

10

App. 1998). Therefore, even if the trial court had improperly overruled appellant's initial objection to this evidence, reversal cannot be predicated on this basis.

Second, even when we hold that there is error, we must conduct a harm analysis to determine whether the error calls for reversal of the judgment. Tex. R. App. P. 44.2. Improper admission of evidence is nonconstitutional error that must be disregarded if it did not affect appellant's substantial rights. Tex. R. App. P. 44.2(b); *see Solomon v. State*, 49 S.W.3d 356, 365 (Tex. Crim. App. 2001). Here, even if the trial court improperly relied on the extraneous offense evidence to rebut appellant's theory that he involuntarily choked the detention officer because of the effect of his pain medication, there is ample evidence (as described above) that appellant violated other terms of his deferred adjudication order; the trial court's decision to revoke appellant's community supervision was therefore proper. *See Moore v. State*, 605 S.W.2d 924, 926 (Tex. Crim. App. 1980) (noting that "one sufficient ground for revocation will support the court's order" to revoke community supervision). Further, there is no indication that the evidence of appellant's choking his father-in-law, comprising three pages of the reporters record from well over 300 pages of testimony, influenced the trial court's sentencing decision. *See In re J.G.*, 195 S.W.3d 161, 183 (Tex. App.—San Antonio 2006, no pet.) (weighing the length of

11

objectionable testimony as a factor in a rule 44.2 harm analysis).  Therefore, we

hold that appellant's substantial rights were not affected.

For these reasons, we overrule appellant's first point.

**Cumulation of Sentences**

In his second point, appellant asserts that the cumulation order contained

in his judgment adjudicating guilt is invalid because it orders that his sentence

is to run consecutively even though he has no prior convictions upon which to

"stack" the sentence.[12]

Article 42.08 of the code of criminal procedure provides,

> When the same defendant *has been* convicted in two or more
> cases, judgment and sentence shall be pronounced in each case in
> the same manner as if there had been but one conviction.  Except
> as provided by Sections (b) and (c) of this article, in the discretion
> of the court, the judgment in the *second and subsequent
> convictions* may either be that the sentence imposed or suspended
> shall begin when the judgment and the sentence imposed or
> suspended in the preceding conviction has ceased to operate, or
> that the sentence imposed or suspended shall run concurrently with
> the other case or cases, and sentence and execution shall be
> accordingly.

Tex. Code Crim. Proc. Ann. art. 42.08 (emphasis added).  For cumulation,

"there must be before the court both evidence of the former conviction and

---

[12] A  portion  of  the  judgment  states  that  the  sentence  "shall  run
consecutive to the case specified below," but no such case is provided.

12

evidence that the defendant was the same person previously convicted." *Barela v. State*, 180 S.W.3d 145, 148 (Tex. Crim. App. 2005).

Here, there is no evidence of any former conviction to support the cumulation language in the judgment adjudicating guilt or the granting of the State's motion to cumulate. The State concedes that the trial court abused its discretion by cumulating appellant's sentence in this case with sentences he may receive in the future.

Appellate courts must remedy "an unlawful cumulation order by reforming the trial court's judgment to delete the unlawful order." *Beedy v. State*, 250 S.W.3d 107, 113 (Tex. Crim. App. 2008); *see Ex parte Jordan*, 562 S.W.2d 483, 484 (Tex. Crim. App. [Panel Op.] 1978); *Parrish v. State*, 628 S.W.2d 524, 526 (Tex. App.—Fort Worth 1982, no pet.).

We hold that the trial court erred by including cumulation language in its judgment adjudicating guilt and by granting the State's motion for cumulative sentences. We therefore sustain appellant's second point and reform the trial court's judgment to delete the cumulation order.

## Conclusion

Having sustained appellant's second point and overruled his first point, we reform the trial court's judgment to delete any and all cumulation language therein, and we affirm the trial court's judgment in all other respects.

13

PER CURIAM


PANEL:  LIVINGSTON, DAUPHINOT, and MCCOY, JJ.

DO NOT PUBLISH
Tex. R. App. P. 47.2(b)

DELIVERED:  January 22, 2009