COURT OF APPEALS

                                                 SECOND
DISTRICT OF TEXAS

                                                                 FORT
WORTH

 

 

                                        NO.
2-08-061-CR

 

 

KERRY BOLLMAN                                                                APPELLANT

 

                                                   V.

 

THE STATE OF TEXAS                                                                STATE

 

                                              ------------

 

             FROM THE 16TH
DISTRICT COURT OF DENTON COUNTY

 

                                              ------------

 

                                MEMORANDUM OPINION[1]

 

                                              ------------

                                            Introduction








Appellant Kerry Bollman appeals his conviction
for arson of a habitation.[2]  In two points, he contends that the trial
court erred by overruling his objection to extraneous offense testimony and by
granting the State=s motion to cumulate his
sentences.[3]  We reform, and as reformed, affirm the trial
court=s
judgment.

                                        Background
Facts

In January 2006, a Denton County grand jury
indicted appellant for committing arson of his ex-wife=s
house.  Five months later, appellant
entered into a plea bargain with the State in which he agreed to be placed on
deferred adjudication community supervision for eight years and abide by
certain conditions.








In April 2007, the State filed a motion to
proceed with the adjudication of appellant=s guilt.
 In September 2007, the State filed a AMotion
for Cumulative Sentences.@[4]  In December 2007, the State filed its second
amended motion to proceed with the adjudication of appellant=s guilt,
asserting that appellant violated the conditions of his deferred adjudication
order by (among other acts) committing several new offenses, failing to pay
child support, and failing to complete his community service obligations.[5]

On January 17, 2008, the trial court commenced
its hearing on the State=s motion to adjudicate.[6]  The evidence presented at the hearing
indicated that appellant understood the terms of his community supervision and
that he regularly met with his probation officer but that he had not completed
any of his community service obligations, that he had not paid child support as
required, and that he had committed several further offenses.[7]  Specifically, appellant=s
ex-wife testified that in April 2007, appellant violated the terms of a
protective order that had been issued during their divorce proceedings.[8]








Also, evidence indicated that in May 2007,
appellant, who had been drinking, went to his father=s
house.  When his father arrived at the
house, appellant pointed a knife at his own chest as if he were going to stab
himself.  He then waved the knife toward
his father, and his father called the police. 
Officers entered the house with their weapons drawn, and appellant told
them to Aleave
him alone.@ 
The officers told appellant to put the knife down, but he refused to do
so and he told the officers to Ashoot
him and that someone was going to die.@  Appellant pointed the knife at himself and at
the officers, and the officers sprayed him with pepper spray.[9]  After appellant still refused to drop the
knife, an officer fired a bean bag shotgun three times at appellant.  After the officers told appellant they would Ataze@ him,
appellant eventually dropped the knife.[10]








Finally, the evidence established that in August
2007, while being released from a hospital after falling in his jail cell and
injuring his wrist and his ribs, appellant choked a uniformed Denton County
detention officer as the officer placed him in a van.[11]  Appellant attempted to explain this event by
testifying that he had an adverse reaction to pain pills given to him in the
hospital and by calling several witnesses who testified that he previously had
such reactions to pain medicine.  The
detention officer testified that he had to go to therapy for pain in his arm
caused by his fall to the ground after appellant choked him.

On February 5, 2008, after the parties rested and
counsel for both sides presented closing arguments, the trial court adjudicated
appellant guilty of the arson charge and assessed punishment at forty years=
confinement.  A week later, the court
held a brief hearing related to appellant=s
sentencing.  At the hearing, the State
noted that it had filed a motion to cumulate appellant=s
sentences and asked the trial court to order that appellant=s arson
sentence run Aconsecutive to any other
sentence [appellant] may receive@ in
cases he had pending in three counties Ain the
event that he receive[d] a sentence@ in
those cases.  The court granted the State=s motion
and formally sentenced appellant.  That
same day, the court entered a judgment reflecting the decisions it had
made.  Appellant filed his notice of this
appeal.








                       Admission
of Extraneous Offense Testimony

In his first point, appellant contends that the
trial court erroneously admitted testimony concerning an extraneous
offense.  Specifically, appellant
complains about a portion of his former father-in-law=s
testimony about him, in which the following colloquy occurred:

[STATE]:                    You
guys have had some ordeals over the years; is that fair to say?

 

[WITNESS]:                Yes,
that=s fair.

 

[STATE]:                    Did
you guys ever get into it physically?

 

[DEFENSE COUNSEL]:   Objection, relevance, Your Honor.

 

[STATE]:                    I=ll be brief and then
there is a point.

 

THE COURT:               Overruled.

 

[STATE]:                    Did
y=all get into it a couple
of times physically?

 

[WITNESS]:                Just
once, really.

 

. . .
.

 

[STATE]:                    And
did this man, [appellant], choke you or attempt to choke you?

 

[WITNESS]:                Yes,
he did.

 

[DEFENSE COUNSEL]:   I object to relevance, Your Honor.

 








[STATE]:                    It
goes to show motive, opportunity, absence of mistake.  They=ve opened the door because this assault on a
public servant in August of 2007 with the jailer, they=re trying to say he had
this magic pill that made him act all goofy and he was temporarily insane for a
few seconds, but he was fine before and he was fine after.  This goes to show that [appellant] has not
only a history of displaying knives, but a history of choking people, just to
prove motive, opportunity, intent, absence of mistake, planning.

 

. . .
. 

 

THE
COURT:               Your objection is
overruled.

[STATE]:                    You
can answer the question.  Did this man
ever choke you?

 

[WITNESS]:                On
one occasion, yes.

 

Appellant asserts that the trial court abused its discretion by
admitting this evidence.








Our review of an order revoking community
supervision is limited to determining whether the trial court abused its
discretion.  Cardona v. State, 665
S.W.2d 492, 493 (Tex. Crim. App. 1984); Allbright v. State, 13 S.W.3d
817, 818 (Tex. App.CFort Worth 2000, pet. ref=d); see
Oveal v. State, No. 14‑07‑00755‑CR, 2008 WL 5085405, at
*2 (Tex. App.CHouston [14th Dist.] Nov. 25,
2008, no pet.) (mem. op., not designated for publication) (applying the abuse
of discretion standard to the granting of a motion to adjudicate).  An abuse of discretion occurs when the trial
judge=s
decision is so wrong that it falls outside the zone within which reasonable
persons might disagree.  Allbright,
13 S.W.3d at 818.  A trial court=s
decision to admit evidence is subject to review from these same standards.  See Moses v. State, 105 S.W.3d 622,
627 (Tex. Crim. App. 2003); Chaddock v. State, 203 S.W.3d 916, 923 (Tex.
App.CDallas
2006, no pet.).

AEvidence of other crimes, wrongs
or acts is not admissible to prove the character of a person in order to show
action in conformity therewith,@ but
such evidence may be admissible to show Amotive,
opportunity, intent, preparation, plan, knowledge, identity, or absence of
mistake or accident.@ 
Tex. R. Evid. 404(b); see Moses, 105 S.W.3d at 626.  The trial court is Aentitled
to deference@ on its decision regarding
whether evidence is relevant to a Anon-propensity
purpose@ under
rule 404(b); such a decision is only reviewable for an abuse of
discretion.  Ransom v. State, 920
S.W.2d 288, 300 (Tex. Crim. App.) (op. on reh=g), cert.
denied, 519 U.S. 1030 (1996); see also Sanders v. State, 255 S.W.3d
754, 760 (Tex. App.CFort Worth 2008, pet. ref=d)
(explaining that the Atrial court is given wide
latitude to admit or exclude evidence of extraneous offenses@).








Rebuttal of a defensive theory is Aone of
the permissible purposes for which relevant evidence may be admitted under Rule
404(b).@  Moses, 105 S.W.3d at 626; see Casey
v. State, 215 S.W.3d 870, 879 (Tex. Crim. App. 2007).  Specifically, evidence of previous violent
acts is admissible under rule 404(b) to rebut such a theory and prove the
intent of the defendant.  See Jones v.
State, 241 S.W.3d 666, 669 (Tex. App.CTexarkana
2007, no pet.); Robinson v. State, 844 S.W.2d 925, 929 (Tex. App.CHouston
[1st Dist.] 1992, no pet.) (noting that when Athe
accused claims self‑defense or accident, the State, in order to show the
accused=s
intent, may show other violent acts where the defendant was an aggressor@).








In Martin v. State, the defendant, who was
charged with aggravated sexual assault of his daughter, submitted a defensive
theory that, on the occasion in question, taking Lithium caused him to have a
delusion that he was in bed with his wife. 
No. 05‑03‑01286‑CR, 2004 WL 1277948, at *1 (Tex. App.CDallas
2004, no pet.) (not designated for publication).  The State countered this theory by presenting
evidence that on a previous occasion while the defendant was not taking
Lithium, he sexually assaulted one of his daughter=s
friends.  Id. at *2.  On appeal, the defendant argued that such
evidence was inadmissible.  Id.  The Dallas court held that the trial court
properly admitted the evidence of the extraneous sexual assault, noting that it
was relevant to show that the defendant acted intentionally and knowingly with
respect to his daughter and to rebut the defensive theory that the sexual
assault was an accident.  Id. at
*3.

Like Martin, in this case appellant
attempted to explain his engaging in criminal activity (specifically, choking a
detention officer) by claiming that he had an adverse reaction to
medication.  We agree with the reasoning
expressed in Martin that evidence of an occasion where appellant acted
similarly while not taking medication is relevant to rebut his defensive theory
that he acted inadvertently because of an adverse reaction to medication.  Id.; see Moses, 105 S.W.3d at
626.  We therefore hold that the trial
court did not abuse its discretion in admitting evidence that appellant had
choked his father-in-law.








Further, even if the trial court had erred by
admitting this evidence, such an error could not be reversible for two
reasons.  First, at a later point in the
hearing on the State=s motion to adjudicate,
appellant=s ex-wife testified without
objection that appellant choked her father. 
To preserve error, a party must continue to object each time
objectionable evidence is offered.  Fuentes
v. State, 991 S.W.2d 267, 273 (Tex. Crim. App.), cert. denied, 528
U.S. 1026 (1999); Ethington v. State, 819 S.W.2d 854, 858B59 (Tex.
Crim. App. 1991).  A trial court=s
erroneous admission of evidence will not require reversal when other such
evidence is received without objection, either before or after the complained‑of
ruling.  Leday v. State, 983
S.W.2d 713, 717B18 (Tex. Crim. App. 1998).  Therefore, even if the trial court had
improperly overruled appellant=s
initial objection to this evidence, reversal cannot be predicated on this
basis.








Second, even when we hold that there is error, we
must conduct a harm analysis to determine whether the error calls for reversal
of the judgment.  Tex. R. App. P.
44.2.  Improper admission of evidence is
nonconstitutional error that must be disregarded if it did not affect appellant=s
substantial rights.  Tex. R. App. P.
44.2(b); see Solomon v. State, 49 S.W.3d 356, 365 (Tex. Crim. App.
2001).  Here, even if the trial court
improperly relied on the extraneous offense evidence to rebut appellant=s theory
that he involuntarily choked the detention officer because of the effect of his
pain medication, there is ample evidence (as described above) that appellant
violated other terms of his deferred adjudication order; the trial court=s
decision to revoke appellant=s
community supervision was therefore proper. 
See Moore v. State, 605 S.W.2d 924, 926 (Tex. Crim. App. 1980)
(noting that Aone sufficient ground for
revocation will support the court=s order@ to
revoke community supervision).  Further,
there is no indication that the evidence of appellant=s
choking his father-in-law, comprising three pages of the reporters record from
well over 300 pages of testimony, influenced the trial court=s
sentencing decision.  See In re J.G.,
195 S.W.3d 161, 183 (Tex. App.CSan
Antonio 2006, no pet.) (weighing the length of objectionable testimony as a
factor in a rule 44.2 harm analysis). 
Therefore, we hold that appellant=s
substantial rights were not affected.

For these reasons, we overrule appellant=s first
point.

                                    Cumulation
of Sentences

In his second point, appellant asserts that the
cumulation order contained in his judgment adjudicating guilt is invalid
because it orders that his sentence is to run consecutively even though he has
no prior convictions upon which to Astack@ the
sentence.[12]

Article 42.08 of the code of criminal procedure
provides,

When the same defendant has
been convicted in two or more cases, judgment and sentence shall be
pronounced in each case in the same manner as if there had been but one
conviction.  Except as provided by
Sections (b) and (c) of this article, in the discretion of the court, the
judgment in the second and subsequent convictions may either be that the
sentence imposed or suspended shall begin when the judgment and the sentence
imposed or suspended in the preceding conviction has ceased to operate, or that
the sentence imposed or suspended shall run concurrently with the other case or
cases, and sentence and execution shall be accordingly.

 








Tex. Code Crim. Proc. Ann. art. 42.08 (emphasis added).  For cumulation, Athere
must be before the court both evidence of the former conviction and evidence
that the defendant was the same person previously convicted.@  Barela v. State, 180 S.W.3d 145, 148
(Tex. Crim. App. 2005).

Here, there is no evidence of any former
conviction to support the cumulation language in the judgment adjudicating
guilt or the granting of the State=s motion
to cumulate.  The State concedes that the
trial court abused its discretion by cumulating appellant=s
sentence in this case with sentences he may receive in the future.

Appellate courts must remedy Aan
unlawful cumulation order by reforming the trial court=s
judgment to delete the unlawful order.@  Beedy v. State, 250 S.W.3d 107, 113
(Tex. Crim. App. 2008); see Ex parte Jordan, 562 S.W.2d 483, 484 (Tex.
Crim. App. [Panel Op.] 1978); Parrish v. State, 628 S.W.2d 524, 526
(Tex. App.CFort Worth 1982, no pet.).

We hold that the trial court erred by including
cumulation language in its judgment adjudicating guilt and by granting the
State=s motion
for cumulative sentences.  We therefore
sustain appellant=s second point and reform the
trial court=s judgment to delete the
cumulation order.

                                             Conclusion

Having sustained appellant=s second
point and overruled his first point, we reform the trial court=s
judgment to delete any and all cumulation language therein, and we affirm the
trial court=s judgment in all other
respects.








 

PER CURIAM

 

PANEL:  LIVINGSTON, DAUPHINOT,
and MCCOY, JJ.

DO NOT PUBLISH

Tex. R. App. P. 47.2(b)

DELIVERED:  January 22, 2009











[1]See Tex. R. App. P. 47.4.





[2]Arson of a habitation is
a first degree felony offense that carries a punishment range of five to ninety-nine
years= confinement.  See Tex. Penal Code Ann. ''
12.32(a), 28.02(d)(2) (Vernon 2003 and Supp. 2008).





[3]In the table of contents
portion of appellant=s brief, he states that
his second point of error concerns an alleged failure of the trial court to Ainstruct the jury . . .
that it could not consider unadjudicated extraneous offenses.@  However, in the argument portion of appellant=s brief, his second point
of error regards cumulation; also, no jury was impaneled in appellant=s case.  For these reasons, we will address sentence
cumulation as appellant=s second point.





[4]The State=s motion, filed pursuant
to article 42.08 of the code of criminal procedure, gave appellant notice Aof the State=s intent for a sentence
on the aforementioned case and cause numbers,@ but it did not refer to
any such cases or cause numbers specifically. 
See Tex. Code Crim. Proc. Ann. art. 42.08 (Vernon 2006).





[5]The State proceeded with
the second amended motion to adjudicate appellant=s guilt.





[6]Appellant has not
challenged the sufficiency of the evidence supporting the findings that the
trial court used to grant the State=s motion and adjudicate him guilty.  For this reason, we will not detail all of
the evidence submitted at the hearing on the State=s motion.  Instead, we will only include a brief summary
of the evidence presented that is relevant to the points raised in this appeal.





[7]Testimony also indicated
that appellant failed to make payments on fines and court costs as his deferred
adjudication order required.  However,
the trial court did not revoke appellant=s deferred adjudication on these grounds because
it found that appellant had no ability to make the payments.





[8]Violation of a protective
order is typically a Class A misdemeanor. 
See Tex. Penal Code Ann. ' 25.07(g) (Vernon Supp. 2008).  Appellant=s protective order prohibited him from
communicating with his ex-wife in a threatening or harassing manner.  Appellant=s ex-wife testified that he made harassing phone
calls to her and that during one of those calls, he threatened to kill her.





[9]Appellant denied pointing
the knife at his father or the officers.





[10]In the State=s motion to adjudicate,
these events were described as deadly conduct and assault of a public servant.





[11]These acts were described
in the State=s motion as assault on a
public servant and attempted escape.





[12]A portion of the judgment
states that the sentence Ashall run consecutive to
the case specified below,@ but no such case is
provided.